CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 09 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ZHENLI YE GON, <br>     Petitioner, <br> v. <br> <br> FRANK E. DYER III, <br> GERALD S. HOLT, and <br> JOHN F. KERRY, <br>     Respondents. | CASE NO. 7:15CV00462 <br> <br> MEMORANDUM OPINION <br> <br> <br> By: Hon. Glen E. Conrad <br> Chief United States District Judge |

    Petitioner Zhenli Ye Gon, through counsel, brings an emergency motion to stay his extradition to Mexico, pending this court's ruling on his petition for a writ of habeas corpus under 28 U.S.C. § 2241. After review of the record, as well as submissions and oral arguments from the parties, for the reasons stated herein, the court summarily dismisses Ye Gon's second amended § 2241 petition for failure to state a claim upon which this court can grant relief. The court also grants Ye Gon's motion for stay only in part, so as to ensure an opportunity to appeal.

## I. BACKGROUND

    The court assumes knowledge of the facts and prior rulings in this case. In brief, Ye Gon has been confined since September 15, 2008, pending resolution of a complaint to extradite him to Mexico to face prosecution on drug charges, money laundering, and the illegal possession of guns. The initial extradition proceedings occurred in the District of Columbia, where the magistrate judge conducted multiple hearings and issued two opinions before certifying on February 9, 2011, that Ye Gon was extraditable under the Extradition Treaty between the United States of America and the United Mexican States ("the treaty"). In re Zhenly Ye Gon, 768 F. Supp. 2d 69 (D.D.C. 2011). The magistrate judge's order committed Ye Gon to the custody of the United States Marshals Service ("USMS") to await the Secretary of State's decision whether to surrender him to Mexican authorities under the treaty as requested.

At that time, as is true now, Ye Gon was confined in a regional jail in Orange, Virginia, within this district. On February 10, 2011, Ye Gon filed petitions for a writ of habeas corpus in this court and in the D.C. district court, challenging the validity of the magistrate judge's extraditability ruling on several grounds. See Ye Gon v. Holder, No. 7:11CV00060 (W.D. Va. 2011); Ye Gon v. Holder, No. 1:11-cv-00969-ABJ (D.D.C. 2011). The case in this district was assigned to Judge James C. Turk, who transferred the petition to the D.C. district court, which later transferred the case back to the Western District, where personal jurisdiction over Ye Gon's custodian was proper. See Ye Gon v. Holder, No. 7:11CV00575 (W.D. Va. 2014). Ultimately, Judge Turk denied Ye Gon's § 2241 petition, but granted his request for a stay of extradition and stayed the enforcement of the judgment "during the pendency of [Ye Gon's] appeal before the United States Court of Appeals for the Fourth Circuit." Ye Gon v. Holder, 992 F. Supp. 2d 637, 665 (W.D. Va. Jan. 17, 2014). The Fourth Circuit issued a published opinion on December 16, 2014, affirming Judge Turk's denial of the § 2241 petition. Ye Gon v. Holt, 774 F.3d 207 (4th Cir. 2014). The Court also denied Ye Gon's petition for rehearing in February 2015, and then granted his motion to stay its mandate, pending the United States Supreme Court's resolution of his petition for a writ of certiorari. The Supreme Court denied that petition on June 22, 2015. The Fourth Circuit thereafter issued its mandate on July 7, 2015. On that date, with the conclusion of Ye Gon's appeal case, the stay of extradition that Judge Turk had granted him expired by its own terms.

Starting in January 2015, Ye Gon, in opposition to his extradition, submitted over 200 pages of materials to the Department of State. (ECF No. 14) Specifically, Ye Gon sought to prove that his extradition to Mexico would violate his rights under the United Nations Convention Against Torture and Other Cruel Inhuman or Degrading Treatment or Punishment

("the Convention" or "CAT"). Congress implemented CAT through the Foreign Affairs Reform and Restructuring Act of 1998 ("FARR Act"),[1] which declared it "the policy of the United States not to . . . extradite . . . any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." 8 U.S.C. § 1231 note. Ye Gon also advised the Department that the district court had stayed his extradition pending completion of his appeal proceedings. (ECF No. 14-2, at 1-2.)

On August 26, 2015, Ye Gon filed the instant § 2241 petition, seeking release from custody because he had not been extradited to Mexico within two months after the Supreme Court denied his certiorari petition. See 18 U.S.C. § 3188. Ye Gon had previously notified the Secretary of State by letter on August 24, 2015, of his intent to seek release under § 3188. The Secretary of State, through his designee, signed a surrender warrant on September 18, 2015, authorizing extradition of Ye Gon to Mexico. The Department notified Ye Gon of the warrant by letter on September 21, 2015. The letter stated, among other things:

> Following a review of all pertinent information, including the materials submitted directly to the Department of State and pleadings and filings, including those submitted to the U.S. District Courts for the District of Columbia and the Western District of Virginia, on behalf of Zhenli Ye Gon, on September 18, 2015, Deputy Secretary Blinken decided to authorize Zhenli Ye Gon's surrender pursuant to 18 U.S.C. § 3186 and the Extradition Treaty between United States and Mexico.

(ECF No. 26-1, at 1.) The following paragraphs recognized the Secretary's "obligation not to extradite a person to a country" where it "is more likely than not" that he would suffer torture there. (Id.) The letter further stated:

> A decision by the Department to surrender a fugitive who has made a claim of torture invoking the Convention reflects either a determination that that fugitive is not more likely than not to be tortured if extradited or an assessment that the fugitive's claim, though invoking the Convention, does not meet the Convention's

---

[1] Foreign Affairs Reform and Restructuring Act, Pub. L. 105-277, Div. G, 112 Stat. 2681-822 (Oct. 21, 1998) (codified in part at 8 U.S.C. § 1231).

3

> definition of torture as set forth in 22 C.F.R. 95. 1(b), and does not trigger a "more likely than not" determination. . . .
>
> As the official responsible for managing the Department's responsibilities in cases of international extradition, I confirm that the decision to surrender Zhenli Ye Gon to Mexico complies with the United States' obligations under the Convention and its implementing statute and regulations.

(Id.) The letter is signed by Tom Heinemann, Assistant Legal Adviser for Law Enforcement and Intelligence, U.S. Department of State. (Id.)

On September 21, 2015, Ye Gon filed an emergency motion for stay of extradition in this court. (ECF No. 11) Simultaneously, Ye Gon also submitted an amended § 2241 petition, asking, among other things, that this court review and reverse the Secretary's surrender decision and terminate all extradition proceedings. (ECF No. 13) Specifically, in addition to (a) his demand for release under § 3188, Ye Gon asserts that (b) the court should grant him relief from extradition under CAT because he will be tortured or killed if surrendered to Mexico for prosecution; (c) he was deprived of due process in the State Department's evaluation of his torture risks in Mexico; and (d) the government actions to deprive him of judicial review of his torture risks violate his rights under the Suspension Clause of the United States Constitution.

The court ordered the Secretary of State not to transfer Ye Gon before the court addressed his emergency motion to stay extradition. (ECF No. 22.) Respondents then filed a brief in opposition to Ye Gon's motion to stay (ECF No. 26), and Ye Gon filed a reply brief (ECF No. 27). On October 2, 2015, the court heard oral arguments from the parties. Thereafter, on October 6, 2015, Ye Gon filed a second amended petition, adding a fifth claim for relief. In that claim, Ye Gon argues that the government's decision to have the deputy Secretary of State issue the decision to extradite him represents an unauthorized and unconstitutional delegation of the executive authority vested in the Secretary by 18 U.S.C. § 3188. (ECF No. 31) Ye Gon

4

contends that the second amended petition "is filed to encompass and include all of the claims and issues raised in the briefings related to" Ye Gon's motion to stay extradition.[2] (ECF No. 31, at 1 n.1.) This submission also presents an additional paragraph, in support of Ye Gon's claim (d), asserting that the decision-making process on the extradition request deprived him of due process. (ECF No. 31, at ¶ 44)

The parties have agreed that under the four-factor standard for granting a stay of extradition, established in Nken v. Holder, 556 U.S. 418, 421 (2009), the court must consider whether Ye Gon has a strong likelihood of success on the merits of his habeas claims.[3] Accordingly, both parties offered extensive discussion of the merits of the claims in their briefs and during oral arguments on October 2, 2015, regarding Ye Gon's motion to stay extradition. Thus, the court finds both the motion for stay and the § 2241 petition itself to be ripe for disposition.

## II. DISCUSSION

### A. Discharge from Custody under 18 U.S.C. § 3188

Ye Gon argues that he is entitled to immediate release under 18 U.S.C. § 3188, because the Secretary of State failed to deliver him to Mexico within two months of the final adjudication of Ye Gon's judicial challenges to extradition. The court concludes that this argument lacks merit.

---

[2] Ye Gon further states that during oral arguments on October 2, 2015, counsel for the government "attempted to suggest that certain arguments may not have been adequately raised" in previous submissions; and that the second amended petition is intended "to remove any doubt—here or on appeal—that these issues are formally raised." (ECF No. 31, at 1 n.1.)

[3] "[T]he power to stay an action is "part of [a court's] traditional equipment for the administration of justice," Nken v. Holder, 556 U.S. 418, 421 (2009), but "a stay is not a matter of right, even if irreparable injury might otherwise result." Id. at 434 (internal quotations and citation omitted). Rather, a stay is "an exercise of judicial discretion," to be guided by consideration of four factors: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" Id. (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). The first two factors of the traditional standard are the most critical. Id.

Section 3188 provides:

> Whenever any person who is committed for rendition to a foreign government to remain until delivered up in pursuance of a requisition, is not so delivered up and conveyed out of the United States within two calendar months after such commitment, over and above the time actually required to convey the prisoner from the jail to which he was committed, by the readiest way, out of the United States, any judge of the United States, or of any State, upon application made to him by or on behalf of the person so committed, and upon proof made to him that reasonable notice of the intention to make such application has been given to the Secretary of State, may order the person so committed to be discharged out of custody, unless sufficient cause is shown to such judge why such discharge ought not to be ordered.

18 U.S.C. § 3188. Congress enacted § 3188 for the purpose of "ensur[ing] prompt action by the extraditing government as well as by this government so that the accused would not suffer incarceration in this country or uncertainty as to his status for long periods of time <u>through no fault of his own</u>." Jiminez v. United States District Court, 84 S. Ct. 14, 18 (1963) (emphasis added) (Goldberg, J., in chambers).

Technically, the two-month period in § 3188 begins to run with the issuance of the magistrate judge's extraditability finding, when the accused is committed to USMS custody to await an extradition order from the Secretary of State and transfer to the custody of the extraditing jurisdiction. Barrett v. United States, 590 F.2d 624, 626 (6th Cir. 1980). Where delays in the extradition process thereafter are "attributable to the [judicial] proceedings prosecuted by petitioner, there certainly [is] 'sufficient cause' for the delay, within the intended meaning of § 3188." Jiminez, 84 S. Ct. at 18. Thus, "[t]he common-sense reading of § 3188 is that, where as here, the accused has instituted and pursued review of his extradition order, the two-month period runs from the time his claims are finally adjudicated, not from the time of the original commitment order he has been challenging." Id. A court-ordered stay of extradition, procured by the accused, likewise releases the Secretary of State from the time constraint of

§ 3188.[4] See In re Assarsson, 670 F.2d 722, 725 (7th Cir. 1982) (holding that court "will not permit [the accused] to use the delay which he himself created to defeat extradition").

Moreover, even if the two-month period has passed, release under § 3188 rests in the court's discretion. The plain language of the current version of this section ("may order") clearly authorizes, but does not require, a judge to discharge an accused. See, e.g., In re United States, 713 F.2d 105, 108 (5th Cir. 1983) (holding that § 3188 "clearly contemplates an exercise of discretion by the courts"). Thus, if "sufficient cause is shown to such judge why such discharge ought not to be ordered," that judge may not discharge the accused and retains discretion to refuse discharge even if such cause is not shown. Barrett, 590 F.2d at 626 ("The enforcement language applicable to the two-month limitation is not . . . of a mandatory nature.").

Ye Gon asserts that because the Secretary of State has not explained the timing of the decision to issue the surrender warrant, the Secretary has not shown sufficient cause for purposes of § 3188. The statute's terms are not properly interpreted so narrowly, however. In determining "sufficient cause" not to order discharge under § 3188, the court must "take into account the entire factual record," including: the length of any delay beyond the statutory period; indications of prejudice from that delay; any demand by the accused for a speedy trial in the jurisdiction seeking to prosecute him; the seriousness of the foreign charges for which probable cause has been found; and the fact that discharge under § 3188 would not terminate the foreign indictment or bar refiling of extradition proceedings. Barrett, 590 F.2d at 626. In Barrett, the Court also considered the pendency of the petition for writ of habeas corpus itself as one of the factors on which it concluded that the government had shown sufficient cause not to discharge the petitioner from custody. Id.

---

[4] See, e.g., Mercer v. Duke University, 401 F.3d 199, 212 n.7 (4th Cir. 2005) ("'A court of appeals' judgment or order is not final until issuance of the mandate; at that time the parties' obligations become fixed.'") (quoting Fed. R. App. P. 41, advisory committee's notes to 1988 Amendments).

7

The two-month period under § 3188 for Ye Gon's transfer to Mexican authorities was triggered on February 9, 2011, by the D.C. magistrate judge's extraditability finding and commitment order. When Ye Gon filed his § 2241 petitions on February 10, 2011, challenging his extradition, the § 3188 period was immediately tolled and continued so during the pendency of all judicial proceedings attributable to Ye Gon, including his habeas proceedings, his habeas appeal, and his certiorari proceedings. Jiminez, 84 S. Ct. at 18. Only when the Fourth Circuit issued its mandate on July 7, 2015, which concluded the habeas appeal proceedings and, thus, lifted the stay of extradition granted at Ye Gon's request by Judge Turk, did the § 3188 period begin to run. In re Assarsson, 670 F.2d at 725.

At the earliest, the § 3188 period expired on September 7, 2015. Thus, Ye Gon's petition for discharge from custody under § 3188, filed on August 26, 2015, was premature and could be denied on that ground alone. The court holds, however, that the § 3188 claim is without merit for other reasons. The Secretary of State's surrender warrant was issued on September 18, 2015, nine days after the two-month window in § 3188. Considering the factual record in its entirety, the court finds sufficient cause not to order Ye Gon discharged from custody under § 3188.

First, the court finds no evidence in the record that the State Department has been anything less than diligent in its consideration of the extensive materials Ye Gon has submitted in support of his multi-part claim, that if extradited to Mexico, he will be at risk of torture and/or death.[5] The Secretary's decision-making process is complex:

> In deciding whether to extradite, the Secretary may consider "factors affecting both the individual defendant as well as foreign relations—factors that may be beyond the scope of the ... judge's review." Sidali v. INS, 107 F.3d 191, 195 n. 7 (3d Cir. 1997). The broad range of options available to the Secretary includes

---

[5] Ye Gon has no separate claim under the United States-Mexican extradition treaty for release from custody based on the Secretary's alleged delay in rendering the surrender decision. At the most, the treaty provides that surrender shall occur within the time limits prescribed by the country receiving the extradition request—namely, in this case, § 3188.

8

(but is not limited to) reviewing de novo the judge's findings of fact and conclusions of law, refusing extradition on a number of discretionary grounds, including humanitarian and foreign policy considerations, granting extradition with conditions, and using diplomacy to obtain fair treatment for the fugitive. See United States v. Kin-Hong, 110 F.3d 103, 109-10 (1st Cir.1997).

Mironescu v. Costner, 480 F.3d 664, 666 (4th Cir. 2007). Thus, the records before the Secretary in Ye Gon's case included court documents, expert testimony, and thousands of pages of materials Ye Gon submitted during the court proceedings in which he challenged his extradition on many grounds other than the risk of torture. Neither party has submitted evidence comparing the materials before the Secretary in Ye Gon's case to any average number of materials the Department must review in consideration of a request to deny extradition or, for that matter, demonstrating any average length of time the Department requires to evaluate such claims.

Second, Ye Gon has not shown prejudice from any brief delay by the Secretary past the two-month deadline in § 3188. Given that Ye Gon presents no evidence that he has sought a speedy trial in Mexico, he has not shown how he was prejudiced by spending two additional weeks in a Virginia jail as opposed to a Mexican jail.

Third, the charges pending against Ye Gon are serious ones, involving not only the unlawful importation and manufacture of substances often used to produce controlled substances, but also the related laundering of millions of dollars, firearms violations, and criminal conspiracy. Section 3188 gives the court no authority to terminate these charges, and the court finds that no useful purpose is served in discharging Ye Gon after nearly seven years of extradition litigation, only to face the potential for that extradition process to begin anew.

Fourth, Ye Gon's § 2241 petition itself, filed before the end of the two-month statutory period, constituted sufficient cause for any delay in the issuance of the surrender warrant. The delays caused by the need to brief and adjudicate that petition, in addition to briefing, hearing,

9

and adjudicating the additional claims in the amended petition, can only be deemed attributable to Ye Gon.

Based on the foregoing, the court concludes that the government has shown sufficient cause as to why Ye Gon should not be discharged from custody under § 3188. Therefore, the court will dismiss Ye Gon's § 2241 petition as to this claim with prejudice.

### B. Review of the Secretary's Decision under CAT

The second claim in this habeas petition—that Ye Gon would be subject to torture if extradited—was presented in his prior § 2241 petition. Judge Turk ruled this claim to be

> foreclosed by the Fourth Circuit's decision in Mironescu v. Costner, 480 F.3d 664, 670-71 (4th Cir. 2007). In Mironescu, the Fourth Circuit first noted that the Convention Against Torture ("CAT"), which is not self-executing, is implemented only through the FARR Act [Foreign Affairs Reform and Restructuring Act, Pub. L. No. 105-277, Div. G, 112 Stat. 2681-82]. See also Turkson v. Holder, 667 F.3d 523, 526 n. 3 (4th Cir. 2012) (noting same). The Mironescu Court concluded that Section 2242(d) of the FARR Act deprived the district court of jurisdiction to consider the petitioner's claims that he would be tortured if extradited. 480 F.3d at 675; see also Munaf v. Geren, 553 U.S. 674 (2008) (in addressing claims of military detainees in Iraq who challenged their transfer to Iraqi officials for prosecution, it would be improper for courts to review the executive branch's determination regarding the likelihood of torture after transfer, because it was a decision for the "political branches," not the courts).

Ye Gon v. Holder, 992 F. Supp. 2d at 663-64 (footnotes omitted). Accordingly, Judge Turk denied relief on this claim. Because the Secretary of State had not yet issued a surrender warrant, however, Judge Turk dismissed the claim without prejudice.

As he did in his initial § 2241 petition, Ye Gon argues that the district court has jurisdiction under § 2241 to review the Secretary of State's final agency action in issuing the surrender warrant, in the face of Ye Gon's evidence that he will likely be tortured if extradited to Mexico. He asks the court to apply the Administrative Procedures Act ("APA") to review and reverse the Secretary's decision to extradite.

10

Ye Gon's counsel conceded at oral argument in this case, however, that the Fourth Circuit's opinion in <u>Mironescu</u> decided these issues against him. In <u>Mironescu</u>, the Court held that the FARR Act expressly restricts courts from considering torture claims in the extradition context. 480 F.3d at 674 ("As Mironescu presents his claim as part of his challenge to extradition, . . . § 2242(d) [of the FARR Act] clearly precluded the district court from exercising jurisdiction."). The Court also held that the APA does not provide an independent source of jurisdiction to hear such claims. <u>See</u> <u>id.</u> at 677 n.15 (citing 5 U.S.C. § 701(a)(1) (providing that APA review of an agency decision is not available if "statutes preclude judicial review")). These holdings in <u>Mironescu</u>—that CAT, the FARR Act, and the APA do not provide authority for court review of the Secretary's surrender decision—are binding on this court.

In short, under <u>Mironescu</u>, this court cannot grant any relief to Ye Gon under § 2241 regarding his assertion that the Secretary erroneously decided against him on his claim under CAT.[6] Therefore, the court will dismiss Ye Gon's § 2241 petition as to this claim with prejudice.

### C. Due Process Consideration

Ye Gon next asserts that the process afforded him by the Secretary of State in the decision to extradite him was arbitrary and capricious in violation of his due process rights, a claim which he contends he can vindicate in federal court under <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). Specifically, he complains that the Department repeatedly rebuffed counsel's requests to discuss Ye Gon's torture claims in person.

---

[6] The court recognizes that the Ninth Circuit has reached a different conclusion on the issue of the extent to which the FARR Act forecloses federal <u>habeas</u> review. In <u>Trinidad y Garcia v. Thomas</u>, 683 F.3d 952, 956 (9th Cir. 2012) (en banc), the Court held that the FARR Act did not repeal all federal <u>habeas</u> jurisdiction over a petitioner's claim that his extradition would violate his rights under CAT and the Due Process Clause. 683 F.3d at 956. This court, however, is bound by the Fourth Circuit's pronouncements on the subject, which are clear.

Ye Gon contends that he "had no way of knowing or responding to any comments or evidence, including potential misstatements, that may have been submitted by Mexican authorities." (ECF No. 13, at 21.) He asserts that merely submitting his materials "into a black hole" without any other involvement in the decision-making process was "inherently deficient" procedural protection for a claim involving risks to his life and well being. (Id.) Ye Gon also maintains that the extradition "letter decision" from the State Department is "inherently deficient," because it is "written in the alternative," making it impossible for him to decipher "<u>why</u> the decision was made" or "<u>what</u> was decided."[7] (ECF No. 31, at 21.)

The court concludes that Ye Gon's due process claim, asking this court to review the mechanisms of the State Department in addressing his CAT claim and its possible negotiations with Mexican authorities, is barred from review under § 2241 by the <u>Mironescu</u> decision. See 480 F.3d at 674 ("The language [of § 2242] plainly conveys that although courts may consider or review CAT or FARR Act claims as part of their review of a final removal order, they are otherwise precluded from considering or reviewing such claims. As [the extraditee] presents his claim as part of his challenge to extradition, rather than removal, § 2422(d) clearly precluded the district court from exercising jurisdiction."). In <u>Mironescu</u>, the district court, in denying the government's motion to dismiss the extraditee's <u>habeas</u> petition, emphasized that it would not conduct a de novo review of the record but instead would "merely determine whether the Secretary did, in fact, consider [the extraditee's] evidence, if only to subsequently and validly reject it." <u>Id.</u> at 668. In the instant case, the court finds that Ye Gon, in the guise of a due process claim, is seeking a similar determination from this court in regard to the validity of the

---

[7] Specifically, Ye Gon asserts that the letter's format leaves him "in the dark about, for example, what charges have been approved for extradition, and whether Mexico gave information or commitments to protect his safety against torture risks if and when he is extradited." (ECF No. 31, at 21-22.)

Secretary's extradition decision under CAT. Again, the court is constrained to hold that it is precluded from exercising jurisdiction over such claim under Mironescu. Moreover, Ye Gon's counsel conceded as much at oral argument as to any substantive due process claim. See also Trinidad, 683 F.3d at 957 (finding that petitioner's "substantive due process claim is foreclosed by Munaf v. Geren, 553 U.S. 674 (2008)").

Even if the court has jurisdiction over Ye Gon's due process claim, he would still not be entitled to habeas relief. To the extent that Ye Gon relies on Trinidad in support of this claim, the court finds that Ye Gon's due process rights were not violated in the instant case. In Trinidad, the Court held that "[t]he process due here is that prescribed by the statute and the implementing regulation." 683 F.3d at 957. Specifically, under CAT and the FARR Act, "the Secretary of State must make a torture determination before surrendering an extraditee who makes a CAT claim." Id. at 956 (emphasis in original). The Court recognized limited jurisdiction under § 2241 to determine whether the Secretary had "compli[ed] with her obligations" to make a torture determination before issuing a surrender warrant. Id. at 957. Thus, the Ninth Circuit ruled that when a petitioner has received a declaration, signed by the Secretary's designee, indicating that the Department complied with its obligations under CAT and other regulations, "the court's inquiry shall have reached its end." Id. The Court in Trinidad expressly overruled any prior decisions "impl[ying] greater judicial review of the substance of the Secretary's extradition decision other than compliance with her obligations under domestic law." Id. (citing Cornejo-Baretto, 218 F.3d at 1012).

In this case, the record reveals that Ye Gon received the extent of the procedural protection contemplated by Congress under the statutes at issue: consideration and an executive decision on the CAT claim before the surrender warrant was issued. See id.; see also Peroff v.

13

Hylton, 563 F.2d 1099, 1102 (4th Cir. 1977) (rejecting claim that due process requires Secretary to hold hearing before exercising discretion to surrender fugitive);[8] Juarez-Saldana v. United States, 700 F. Supp. 2d 953, 962 (W.D. Tenn. 2010) (finding that "there is no procedural due process requirement to provide [the extraditee] with a hearing, nor is a hearing necessary or appropriate" (citing Peroff, 563 F.2d at 1102)).

For these reasons, the court concludes that Ye Gon has not stated a due process claim under any theory on which this court may grant him relief under § 2241. The court will dismiss his petition as to this claim with prejudice.

### D. Suspension Clause Concerns

In his fourth claim under § 2241, Ye Gon asserts that the Suspension Clause of the Constitution prohibits the court from applying the FARR Act so as to preclude habeas review of his claim that he would be subject to torture if extradited. (See ECF No. 31, at 8 ("The government actions to deprive petitioner of judicial review of his torture risks violate his rights under the Suspension Clause of the U.S. Constitution.")). This claim was not decided by the Fourth Circuit in Mironescu.[9] The court concludes, however, that it is without merit.

The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." Art. I, § 9, cl. 2. The Suspension Clause "ensures that, except during periods of formal suspension, the judiciary will have a time-tested device, the writ, to maintain the delicate balance

---

[8] In Peroff, the Fourth Circuit notes that "[t]he need for flexibility in the exercise of Executive discretion is heightened in international extradition proceedings which necessarily implicate the foreign policy interests of the United States. Thus, while Congress has provided that extraditability shall be determined in the first instance by a judge or magistrate, 18 U.S.C. § 3184, the ultimate decision to extradite is ordinarily a matter within the exclusive purview of the Executive." Peroff, 563 F.2d at 1102 (internal quotation marks and citation omitted).

[9] See 480 F.3d at 677 n.15 ("Mironescu does not argue that denying him the opportunity to present his CAT and FARR Act claims on habeas review violates the Suspension Clause. We therefore do not address that issue.").

14

of governance that is itself the surest safeguard of liberty." Boumediene v. Bush, 553 U.S. 723, 746 (2008).

The Supreme Court has not decided whether the Suspension Clause "protects the writ as it existed when the Constitution was drafted and ratified," or whether the Clause's "protections . . . have expanded along with post-1789 developments." Bush, 553 U.S. at 746; see also INS v. St. Cyr, 533 U.S. 289, 300-01 (2001) ("[A]t the absolute minimum, the Suspension Clause protects the writ 'as it existed in 1789.'") (citation omitted). While the Fourth Circuit has "hinted that the Clause might very well protect only the former and not the latter," it has also declined to settle this particular question. United States v. Surratt, 797 F.3d 240, 264 (4th Cir. 2015) (citing In re Vial, 115 F.3d 1192, 1197 n.11 (4th Cir. 1997)).

Habeas review in the extradition context has traditionally been limited to determining (a) whether the court has jurisdiction over the petitioner, (b) whether the extradition request falls within the scope of the treaty, and (c) whether the foreign charge is supported by probable cause. See Fernandez v. Phillips, 268 U.S. 311, 312 (1925). Ye Gon has clearly had the full benefit of habeas review of the extradition request under this standard.

Ye Gon now seeks habeas review of the surrender decision itself on the basis that he would be subject to torture if extradited to Mexico. However, he cites no binding precedent supporting his claim that habeas review is available to challenge the treatment that he might receive at the destination at which he is to be extradited. As the D.C. Circuit previously noted, "[t]hose facing extradition traditionally have not been able to maintain habeas claims to block transfer based on conditions in the receiving country." Omar v. McHugh, 646 F.3d 13, 19 (D.C. Cir. 2011). Instead, "courts historically have refused to inquire into conditions an extradited individual might face in the receiving country." Id.

15

This precise point was reaffirmed by the Supreme Court in <u>Munaf</u> in which it addressed the due process claims of military detainees who challenged their transfer to Iraqi officials for prosecution. 553 U.S. at 692. Citing extradition case law, the Supreme Court concluded that it would be improper for courts to grant <u>habeas</u> review of the Executive branch's determination regarding the likelihood of torture after transfer, because it was a decision for the "political branches" as opposed to the courts. <u>Id.</u> at 700-01. The Court noted that "[h]abeas corpus has been held not to be a valid means of inquiry into the treatment the relator is anticipated to receive in the requesting state," and that its prior decisions make clear that "it is for the political branches, not the Judiciary, to assess practices in foreign countries and to determine national policy in light of those assessments." <u>Id.</u> (internal citations and quotation marks omitted).

For these reasons, the court concludes that Ye Gon's invocation of the Suspension Clause does not permit the court to deviate from the Fourth Circuit's decision in <u>Mironescu</u>, which clearly precludes the court from reviewing his claim that the risk of torture should bar his extradition. Accordingly, the court will dismiss his petition as to this claim.

### E. Improperly Delegated Authority

In his fifth claim under § 2241, Ye Gon contends that "the government's decision to have the Deputy Secretary of State issue [the surrender warrant] represents an unauthorized and unconstitutional delegation of executive authority." (ECF No. 31, at 25.) He asserts that Congress plainly stated in 18 U.S.C. § 3188 its intent for such decisions to be issued by the Secretary of State, and not the State Department in general. Furthermore, Ye Gon argues that 22 U.S.C § 2651a(a)(4) provides that the Secretary may delegate his authority only when it is necessary to do so.

16

Again, for the reasons stated above, the court finds that this improper delegation claim is yet another attempt by Ye Gon to obtain judicial review of the Secretary's (or Deputy Secretary's) decision under CAT. Because Ye Gon presents this claim as part of his habeas corpus challenge to the Secretary's extradition decision, the court finds that § 2242(d) of the FARR Act again precludes the district court from exercising jurisdiction over the claim.

Moreover, even if the court did have jurisdiction, the improper delegation claim is without merit. Section 3188 merely requires a petitioner seeking release under that provision to give prior notice to the Secretary of State; the section does not suggest that an extradition decision is the exclusive province of the Secretary personally. On the contrary, Congress has expressly provided that "[u]nless otherwise specified in law, the Secretary may delegate authority to perform any of the functions of the Secretary or the Department to officers and employees under the direction and supervision of the Secretary." 22 U.S.C. § 2651a(a)(4). Under this section, the Secretary has "delegate[d] to the Deputy Secretary . . . all authorities and functions vested in the Secretary of State or the head of agency by any act, order, determination, delegation of authority, regulation, or executive order." Delegation from the Secretary to the Deputy Secretary and the Deputy Secretary for Management and Resources of Authorities of the Secretary of State, 74 Fed. Reg. 8835-01 (Feb. 26, 2009) (Clinton, H.). Moreover, the Department of State regulations promulgated under the FARR Act to implement the Torture Convention expressly provide that "Secretary means Secretary of State and includes, for purposes of this rule, the Deputy Secretary of State, by delegation." 22 C.F.R. § 95.1(d). See also Trinidad, 683 F.3d at 957 (finding that an extraditee is entitled to "a declaration that [the Secretary of State"] has complied with [his] obligations," which must be "signed by the Secretary or a senior official properly designated by the Secretary"). Therefore, this delegation

17

of authority from the Secretary does not appear to be inconsistent with the regulations or the statutes, and falls within the statutory provision empowering the Secretary to make appropriate delegations.

For these reasons, the court concludes that it has no jurisdiction to grant Ye Gon relief under § 2241 for his improper delegation claim and that the claim is without merit. The court will dismiss his petition as to this claim with prejudice.

### III. CONCLUSION

For the foregoing reasons stated, the court summarily dismisses Ye Gon's second amended § 2241 petition with prejudice as without merit under controlling law.[10] See Rules 1(a) and 4, Rules Governing § 2254 Cases. As the petition is dismissed, Ye Gon's emergency motion for stay of extradition during the pendency of this case is moot. At counsel's request during oral arguments, however, the court will grant a brief stay of extradition to ensure that Ye Gon has an opportunity to note an appeal and seek a stay from the Fourth Circuit.

An appropriate order will enter this day.

ENTER: This 9th day of October, 2015.

_____
Chief United States District Judge

---

[10] Ye Gon also states that he is seeking coram nobis relief under the All Writs Act, 28 U.S.C. § 1651. The court finds no merit to this claim, which Ye Gon does not brief. The writ of coram nobis was "traditionally available only to bring before the court factual errors material to the validity and regularity of the legal proceeding itself, such as the defendant's being under age or having died before the verdict." Carlisle v. United States, 517 U.S. 416, 428 (1996) (internal quotations and citation omitted). Ye Gon points to no such fundamental factual error.

18